AO 106 (Rev. 04/10) Application for a Search Warrant       AUTHORIZED AND APPROVED/DATE

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
A BLACK IPHONE WITH AN UNKNOWN SERIAL NUMBER, CURRENTLY LOCATED AT DEA OKLAHOMA CITY, 901 NE 122ND STREET, OKLAHOMA CITY, OKLAHOMA

Case No. M-24-726-AMG

FILED SEP 26 2024 JOAN KANE, CLERK U.S. DIST. COURT, WESTERN DIST. OKLA. BY ___ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute and to Distribute Controlled Substances |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:
See attached Affidavit of DEA Special Agent Juan F. Domenech

☐ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days:( ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Juan F. Domenech, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/26/24

*Judge's signature*

City and state: Oklahoma City, Oklahoma       Amanda Maxfield Green, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK IPHONE WITH AN UNKNOWN SERIAL NUMBER, CURRENTLY LOCATED AT DEA OKLAHOMA CITY, 901 NE 122ND STREET, OKLAHOMA CITY, OKLAHOMA | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Juan F. Domenech, am a Special Agent (SA) of the Drug Enforcement Administration (DEA) being duly sworn, depose and state as follows:

1. I am "an investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been in law enforcement since I became a federal agent in September 2015. After successfully completing the training academy for the United States Border Patrol, I was assigned to the McAllen, Texas Border Patrol station for approximately four years. During my time as a Border Patrol Agent, I conducted countless arrests pertaining to human and narcotics smuggling. In April 2019, I was hired by the Drug Enforcement Administration (DEA) and attended the four-month academy in Quantico, Virginia. In August 2019, I was assigned to DEA in Oklahoma City, Oklahoma, where I am assigned today. Through my training and experience, I have become familiar with the methods and operation of drug distributors, including their common organizational structures, use of

violence, methods of distributing, storing, and transporting drugs, and methods of collecting and laundering drug proceeds.

3. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations including the following; surveillance; search warrants; arrests; reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

4. I have had conversations with and been in the company of other experienced local, state, and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations. I also worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug traffickers.

5. I have received formal training in the detection and recognition of criminal activity, including narcotic and gang related offenses. I have also been involved in numerous narcotic investigations on the state and federal level which have resulted in apprehension of persons on narcotic and narcotic related charges during my career in law enforcement.

6.  I am submitting this Affidavit in support of a search warrant authorizing a search of a **black iPhone, unknown serial number** (hereinafter **SUBJECT PHONE**), as further described in **Attachment A**, which is incorporated into this Affidavit by reference. The DEA in Oklahoma City has custody of the **SUBJECT PHONE** in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant, which would authorize the forensic examination of the **SUBJECT PHONE** for the purpose of identifying electronically-stored data that is particularly described in **Attachment B**, which constitute instrumentalities, evidence, and fruits of violations of 21 U.S.C. §§ 841(a)(1) and 846. The requested warrant would also authorize the seizure of the items and information specified in **Attachment B**.

7.  Based on my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed by Ernesto CONILL-Perez, Elijah BOWLES III, and others. There is also probable cause to search the property described in **Attachment A** for instrumentalities, evidence, and fruits of these crimes, as described in **Attachment B**.

8.  Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

## FACTS AND CIRCUMSTANCES

9. On September 12, 2024, the Drug Enforcement Administration (DEA) and the Oklahoma Bureau of Narcotics (OBN) were conducting surveillance as part of an investigation into a methamphetamine and fentanyl drug-trafficking organization (DTO). On this date, DEA and OBN agents were conducting physical surveillance in the vicinity of the Comfort Inn and Suites, located at 3141 NW Expressway, Oklahoma City, Oklahoma.

10. During surveillance, the DEA and OBN identified a dark blue Toyota RAV 4, which was consistent with information that law enforcement had received concerning the vehicle being used to transport a large amount of fentanyl. This vehicle displayed a Texas License Plate, VDC-8341, which law enforcement indices showed assigned to EAN Holdings LLC, which, in my training and experience, is indicative of a rental company. DEA and OBN observed two individuals exit the vehicle and walk into the Comfort Inn and Suites, located at 3141 NW Expressway, Oklahoma City, Oklahoma. These two individuals were later identified as CONILL and BOWLES.

11. Later that day, at approximately 5:15 p.m., agents observed CONILL exit the lobby of the Comfort Inn and Suites and walk north towards another hotel, the Samir Stay, located at 5704 Mosteller Drive, Oklahoma City, Oklahoma. Law enforcement observed CONILL enter the rear passenger seat of a red Nissan Versa. After a brief moment, CONILL exited the vehicle. CONILL walked back toward the Comfort Inn and Suites. The Nissan Versa exited the parking lot and traveled east on the NW Expressway. Based on my

training and experience, the interaction between CONILL and the occupant of the Nissan Versa was likely a drug transaction

12. An OBN agent conducted a traffic stop on the Nissan Versa. In the course of the traffic stop, law enforcement located a package on the operator of the Nissan Versa (hereinafter, CD-1). The package was approximately 1,000 counterfeit M-30 pills, which were wrapped in brown packing tape. CD-1 provided a post-*Miranda* statement in which CD-1 admitted that the drugs were acquired from CONILL in the parking lot of the Samir Stay.

13. Simultaneous to the traffic stop of the Nissan Versa, law enforcement observed BOWLES enter the Toyota RAV 4 and exit the parking lot. An OBN agent conducted a traffic stop on the Toyota RAV 4, and BOWLES was placed under investigative detention for his suspected involvement in fentanyl distribution. Both BOWLES and the Toyota RAV 4 were transported back to the Comfort Inn and Suites pending contact with CONILL.

14. Following the seizure of the 1,000 M-30 pills from CD-1, I contacted the front staff of Comfort Inn and Suites to inquire about the room in which CONILL was staying. The front office clerk advised me that CONILL did not rent the room, but another individual traveling with him named BOWLES had rented it. Both presented valid identification licenses to the clerk as confirmation.

15. As I was speaking with management staff, CONILL entered the lobby carrying a blue/black duffel bag and proceeded to the exit of the hotel. DEA and OBN agents attempted to speak with CONILL, who reacted by running away on foot. During the

chase, CONILL tossed the duffel bag over the fence and into the swimming pool area of the Residence Inn, located at 3151 NW Expressway, Oklahoma City, Oklahoma. CONILL was ultimately caught and arrested. The duffel bag was recovered by law enforcement. Inside the duffel bag were several bundles of brown-taped packages, consistent with the package recovered from CD-1.

16. The packages were transported to the DEA Oklahoma City District Office, where it was determined that the bundles contained approximately 4.8 kilograms of counterfeit M-30 pills. A subsequent field test on a sample of the suspected fentanyl returned a presumptive positive result for the presence of fentanyl.

17. After CONILL's arrest, I and other DEA agents conducted a *Mirandized* interview with CONILL. CONILL advised us that he was in contact with multiple Mexico-based phone numbers whose users directed him on where to make the fentanyl deliveries. During the interview, CONILL demonstrated this by showing law enforcement selected conversations on his phone. Based on this interview, I know that CONILL and other members of the DTO use cell phones to conduct drug trafficking, including coordinating transactions between other co-conspirators. Following the interview, law enforcement seized the CONILL's phone as evidence.

18. Once BOWLES was transported to the Comfort Inn and Suites, a *Mirandized* interview with BOWLES was attempted. At the conclusion of BOWLES hearing his *Miranda* warnings, BOWLES invoked his right to remain silent and refused to answer questions regarding the day's events. Following his invocation, investigators seized the

**SUBJECT PHONE** for evidentiary purposes. BOWLES was later released pending further investigation.

19. Following CONILL's arrest, law enforcement further discovered that CONILL had landed at Will Rogers World Airport in Oklahoma City, Oklahoma that day. Based on my training and experience, CONILL would not have been traveling on an airplane with a duffel bag filled with fentanyl pills due to the security measures in place related to airline travel. Law enforcement further discovered that the Toyota RAV 4 had been rented by BOWLES in California on August 28, 2024, and had been returned on September 15, 2024. During that period of time, the vehicle had driven approximately 5,700 miles.

20. Based on my training and experience, I believe that BOWLES worked with CONILL and others in the distribution of fentanyl. I reach this conclusion based on BOWLES's operation of the vehicle; BOWLES's rental of the hotel room; BOWLES's rental of the Toyota RAV 4; and the likelihood that BOWLES transported the fentanyl to Oklahoma City, whereupon he picked up CONILL.

21. Given the presence of drug-related conversations on CONILL's phone and based both on BOWLES's involvement in the hotel and vehicle rental, and his close association with CONILL, I believe that there is a strong likelihood that BOWLES likewise utilized the **SUBJECT PHONE** in the drug-trafficking enterprise.

22. Based upon my training and experience, I am aware that individuals involved in trafficking illegal drugs often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illegal

narcotics. Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of drug trafficking offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

23. Based on my training and experience, I know that individuals involved in trafficking illegal drugs often take and store photographs of controlled substances and the proceeds of drug sales, and usually take and store these photographs using their cell phones.

24. Based on my training and experience, I am familiar with ways individuals involved with drug trafficking often utilize multiple cell phones for a variety of reasons related to drug distribution. A few of the reasons include keeping sources of supply and customers separate and preventing law enforcement from identifying the cellular device being used. In my training and experience, it is common for drug traffickers to use multiple phones and phone numbers to orchestrate the distribution of illicit substances.

25. Based on my training and experience, I know that electronic devices like the **SUBJECT PHONE** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the electronic device. This information can sometimes be recovered with forensic tools. This is true even if the user of the electronic device deleted the file. This is so because when a person "deletes" a file on a computer or electronic device, the data contained in the file does not actually disappear; rather, the data remains on the storage medium until it is overwritten by new data.

26.     Based on the above information, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have occurred, and that evidence, fruits, and instrumentalities of these offenses are located on the **SUBJECT PHONE**. Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT PHONE**, described in **Attachment A**, authorizing the seizure of the items described in **Attachment B**.

27.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT PHONE** consistent with the warrant. The examination may require law enforcement to employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of the **SUBJECT PHONE** to human inspection in order to determine whether it is evidence described by the warrant.

28. Because the warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

_____
JUAN F. DOMENECH
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me this 26TH day of September, 2024.

_____
AMANDA MAXFIELD GREEN
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is a black iPhone, unknown serial number, hereinafter the "Subject Phone." The Subject Phone is currently located at DEA Oklahoma City, 901 NE 122nd Street, Oklahoma City, Oklahoma. A photo of the Subject Phone is below:



This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the

custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of the crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely a violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846:

1. All records on the Subject Phone described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Ernesto CONILL-Perez, Elijah BOWLES III, and others from July 1, 2024, to the present, including:

   a. lists of customers and related identifying information;

   b. lists of co-conspirators and related identifying information;

   c. records of communications with customers or co-conspirators, whether such communication be a telephone call, text message (e.g., SMS or MMS), instant message, or communication through an application stored on the phone;

   d. records detailing the types, amounts, or prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

  e. any information related to the sources of drugs, including names, addresses, phone numbers, or any other identifying information);

  f. any audio recordings, pictures, video recordings, or still-captured images on the Subject Phone related to the purchase, sale, transportation, or distribution of controlled substances or the collection, transfer or laundering of drug proceeds;

  g. all bank records, checks, credit card bills, account information, and other financial records; and

  h. any location data related to the acquisition or distribution of controlled substances.

2. Evidence of user attribution showing who used or owned the Subject Phone described in Attachment A at the time the things described in this warrant were created, edited, or deleted, including:

  a. logs, phonebooks, saved usernames and passwords, documents, and browsing history;

  b. text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

  c. photographs;

  d. records of Internet Protocol addresses used; and

  e. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.